# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5053 | **DATE** | October 4, 2000 |
| **CASE TITLE** | *Zenith Electric Corporation, et al. vs. Kimball International Manufacturing, Inc. et al.* | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐    Filed motion of [ use listing in "Motion" box above.]

(2) ☐    Brief in support of motion due _____.

(3) ☐    Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐    Ruling/Hearing on _____ set for _____ at _____.

(5) ☐    Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐    Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐    Trial[set for/re-set for] on _____ at _____.

(8) ☐    [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐    This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■    [Other docket entry]   Enter Memorandum Opinion and Order. The court (1) denies plaintiffs' motion to remand [8-1]; (2) denies defendants' motion to dismiss [2-1]; and (3) grants defendants' motion to transfer [2-2]. The court orders that this case be transferred forthwith, pursuant to 28 U.S.C. § 1404(a) and Local Rule 83.4, to the United States District Court for the Southern District of Indiana, Indianapolis Division. No motions for reconsideration will be entertained.

(11) ■    [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

CW    courtroom deputy's initials

number of notices

OCT 0 5 2000
date docketed

docketing deputy initials

date mailed notice

mailing deputy initials

**Document Number**

ED-7
FILED FOR DOCKETING
00 OCT -4 PM 3: 31

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ZENITH ELECTRONICS CORPORATION,<br>ZENITH ELECTRONICS CORPORATION<br>OF TEXAS, and ZENCO DE CHIHUAHUA,<br>S.A. DE C.V., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 00 C 5053 |
| KIMBALL INTERNATIONAL<br>MANUFACTURING, INC., KEPCO, INC.<br>KIMBALL DE JUAREZ, S.A. DE C.V.,<br>KEPCO REALTY, S.A. DE C.V., and BANK<br>ONE TRUST COMPANY, N.A., formerly known<br>as NBD BANK, NA, | ) ) ) ) ) ) ) | Judge James H. Alesia<br><br>**DOCKETED**<br>OCT 0 5 2000 |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Currently before the court are (1) plaintiffs' motion to remand and (2) defendants' motion

to dismiss and/or transfer venue to the United States District Court for the Southern District of

Indiana. For the following reasons, the court (1) denies plaintiffs' motion to remand; (2) denies

defendants' motion to dismiss for lack of venue; and (3) grants defendants' motion to transfer

venue. The court orders this case to be transferred forthwith, pursuant to 28 U.S.C. § 1404(a)

and Local Rule 83.4, to the United States District Court for the Southern District of Indiana,

Indianapolis Division.

The principal question before the court is whether diversity of citizenship exists in light of the fact that the domestic citizens on both sides of the action are diverse, but in addition, there are Mexican parties on both sides of the action.

## I. **BACKGROUND**

Plaintiff Zenith Electronics Corporation is a Delaware corporation with its principal place of business in Glenview, Illinois. Plaintiff Zenith Electronics Corporation of Texas is a Texas corporation with its principal place of business in Glenview, Illinois. Plaintiff Zenco de Chihuahua, S.A. de C.V. is a Mexican corporation with its principal place of business in Ciudad Juarez, Chihuahua, Mexico.

Defendants Kimball International Manufacturing, Inc. and Kepco, Inc. are Indiana corporations with their principal places of business in Jasper, Indiana. Defendants Kimball de Juarez, S.A. de C.V. and Kepco Realty, S.A. de C.V. are Mexican corporations with their principal places of business in Juarez, Chihuahua, Mexico.

In 1999, defendants purchased a manufacturing plant from plaintiffs, and all the parties signed a contract called "Purchase Agreement by and among Kimball International Manufacturing, Inc., Kepco, Inc., Kimball de Juarez, S.A. de C.V., and Kepco Realty, S.A. de C.V. ('Buyers') and Zenith Electronics Corporation, Zenith Electronics Corporation of Texas, and Zenco de Chihuahua, S.A. de C.V. ('Sellers')" ("Purchase Agreement").[1] The Purchase Agreement incorporated an Escrow Agreement which required that one million dollars of the

---

[1]Because there is no allegation to the contrary, all parties implicitly concede that they each signed the Purchase Agreement in its entirety.

purchase price for the Juarez Plant be held in escrow. This case arises out of an alleged breach

of that Escrow Agreement.

The Purchase Agreement also included a forum-selection clause which reads in pertinent

part:

> (i) Jurisdiction and Venue. Each of the Parties irrevocably submits to the
> exclusive jurisdiction of the federal courts of the United States sitting in the
> Southern District of Indiana (Indianapolis, Indiana) in connection with any action
> relating in any way to this Purchase Agreement or any of the Transaction
> Agreements. ... Each of the Parties irrevocably waives, to the fullest extent
> permitted by all applicable laws, any objection that it may now or hereafter have
> to the laying of venue of any action brought in the federal courts of the United
> States sitting in the Southern District of Indiana (Indianapolis, Indiana) and any
> claim that any action brought in any such court has been brought in an
> inconvenient forum.

(Def. Mot. Ex. A at 43.)[2]

Defendants asserted claims to a portion of the funds in the Escrow Account. However,

plaintiffs contend that defendants wrongfully asserted these claims. In response, on July 19,

2000, plaintiffs filed this action in the Circuit Court of Cook County, Illinois, for breach of

contract, declaratory judgment, specific performance, and fraud. On August 17, 2000,

defendants filed a timely notice of removal in this court, alleging subject matter jurisdiction

under 28 U.S.C. § 1332(a). On the same day, the defendants filed a motion to dismiss pursuant

to Federal Rule of Civil Procedure 12(b)(3) and/or transfer venue, pursuant to 28 U.S.C. §

1404(a), to the United States District Court for the Southern District of Indiana. Defendants base

---

[2]According to its definition set forth in the Purchase Agreement, the term "Transaction
Agreements" encompasses both the Purchase Agreement and the Escrow Agreement that are in
dispute. (*See* Def. Mot. Ex. A at 7.)

their motion on the forum-selection clause contained in the Purchase Agreement in which the parties "irrevocably submit[ted] to the exclusive jurisdiction of the federal courts of the United States sitting in the Southern District of Indiana (Indianapolis, Indiana) in connection with any action relating in any way to this Purchase Agreement or any of the Transaction Agreements." (Def. Mot. Ex. A at 43.) Then, on September 7, 2000, plaintiffs filed a motion to remand the action to state court, arguing that this court does not have diversity jurisdiction. Plaintiffs base their argument on the fact that there are Mexican corporations on both sides of the action.

## II. DISCUSSION

### A. Jurisdiction

Defendants removed this action based on federal diversity jurisdiction and now argue that venue is not proper here because the forum-selection clause mandates that this action proceed in the United States District Court for the Southern District of Indiana. Plaintiffs, on the other hand, assert that this court lacks jurisdiction, and, therefore, has no authority to hear or transfer this case, but instead must remand the action back to the Circuit Court of Cook County. Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States. ..." 28 U.S.C. § 1441(a). Because § 1441 allows removal of actions only within the federal court's original jurisdiction, and because § 1404(a) allows a court to transfer actions only within its jurisdiction, the first question for consideration is whether this court has jurisdiction.

4

United States District Courts are courts of limited jurisdiction. Defendants base their removal of this action on 28 U.S.C. § 1332, which gives the court subject matter jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332. In order for the court to have diversity jurisdiction over a case, the complaint must allege (1) the amount in controversy exceeds $75,000, exclusive of costs and interest and (2) there exists complete diversity of citizenship between the parties. *Id.*

In this case, the amount in controversy exceeds $75,000. Further, there are diverse domestic citizens on both sides of this action. However, there are additional parties – foreign parties – on both sides as well. In this case, therefore, the court's jurisdiction is predicated upon 28 U.S.C. § 1332(a)(3) which states, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy ... is between ... citizens of different States and in which citizens or subjects of a foreign state are additional parties...." *Id.* § 1332(a)(3).[3]

Plaintiffs base their motion to remand solely on the argument that diversity jurisdiction is lacking in this case because alien parties on opposite sides of the action come from the same

---

[3]Courts have held that the term "additional" in § 1332(a)(3) does not require the court to weigh the relevant interests at stake to determine if the United States citizens are the "principal adverse parties." *See, e.g., Dresser Industries, Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 498 (3d Cir. 1997) ("[t]he use of the term 'additional' does not reference the level of involvement of the parties or the interests at stake. Rather, it merely indicates that the jurisdictional hook upon which the case hangs is the existence of a legitimate controversy between diverse citizens, and unless that requirement is satisfied, jurisdiction will not exist"); *Bank of New York v. Bank of America*, 861 F. Supp. 225, 229 (S.D.N.Y. 1994) (holding that diversity jurisdiction can be found pursuant to 1332(a)(3) even if the major parties on opposite sides of an action are citizens of foreign nations, provided there are citizen parties of diverse citizenship whose presence in the suit goes beyond "window dressing").

foreign state – Mexico. Meanwhile, defendants argue that the presence of Mexican parties on both sides of the action does not destroy diversity. Therefore, the principal issue before the court is whether the presence of aliens from the same alien nation as additional parties on both sides of an action destroys diversity jurisdiction under § 1332(a)(3). For the reasons set forth below, the court holds that such presence does not destroy diversity.

In defining the diversity jurisdiction over suits involving foreigners, the Supreme Court long ago rejected the contention that two aliens, standing alone, may sue each other in federal court. *Hodgson v. Bowerbank,* 9 U.S. (5 Cranch) 303 (1809) (cited as authority by *Karazanos v. Madison Two Associates,* 147 F.3d 624, 626 (7th Cir. 1998). Courts have extended this holding to conclude that, where one side of the action contains only foreign parties and the other side has a mixture of foreign and domestic parties, the case falls outside § 1332's jurisdictional grant. *See Karazanos,* 147 F.3d at 627 (citing *Allendale Mut. Ins. v. Bull Data Sys.,* 10 F.3d 425, 428 (7th Cir. 1993)).

In sharp contrast, however, the language of § 1332(a)(3) clearly dictates that federal diversity jurisdiction exists where aliens are *additional* parties in a suit between American citizens of different states. 28 U.S.C. § 1332(a)(3) (emphasis added). Although virtually every authority that has construed § 1332(a)(3) has held that the presence of aliens as additional parties on both sides of the action does not destroy diversity jurisdiction (provided there are diverse domestic citizens on both sides of the action who are legitimately interested parties in the dispute), these authorities do not specifically address the situation where the additional parties are from the same foreign nation. *See Dresser Indus., Inc. v. Underwriters at Lloyd's of London,*

6

106 F.3d 494, 497-500 (3d Cir. 1997); *Transure, Inc. v. Marsh and McLennan, Inc.*, 766 F.2d 1297, 1298-99 (9th Cir. 1985); *Goar v. Compania Peruana de Vapores*, 688 F.2d 417, 421 n.6 (5th Cir. 1982); *Bank of New York v. Bank of America*, 861 F. Supp. 225, 228-29 (S.D.N.Y. 1994); *Commercial Union Ins. Co. v. Cannelton Indus., Inc.*, 154 F.R.D. 164, 169 (D.C. Mich. 1994); *Camper & Nicholsons Int'l, Ltd. v. Blonder Marine & Charter, Inc.*, 793 F. Supp. 318, 320 (S.D. Fla. 1992); *Clark v. Yellow Freight System, Inc.*, 715 F. Supp. 1377, 1378 (E.D. Mich. 1989); *K & H Business Consultants Ltd. v. Cheltonian, Ltd.*, 567 F. Supp. 420, 423-24 (D.N.J. 1983); *Samincorp., Inc. v. Southwire Co., Inc.*, 531 F. Supp. 1, 2-3 (N.D. Ga. 1980); *Lavan Petroleum Co. v. Underwriters at Lloyds*, 334 F. Supp. 1069, 1071 (S.D.N.Y. 1971); 13B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3604 (1984) [hereinafter "WRIGHT & MILLER"]; 1 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 102.71 (3d ed. 1997) [hereinafter "MOORE'S FEDERAL PRACTICE"]. Thus, under § 1332(a)(3), complete diversity is required for domestic citizens, and "additional parties" – meaning the involvement of aliens on either or both sides of an action – does not destroy diversity jurisdiction. The more difficult question, however, is whether diversity jurisdiction exists under § 1332(a)(3) when the alien parties on both sides of an action are citizens of the *same* alien nation.

Neither the Supreme Court nor the Seventh Circuit has directly addressed this issue; therefore, no precedent binds this court.[4] In fact, the only Court of Appeals to directly address

---

[4]The Seventh Circuit has addressed similar issues. *See Allendale Mut. Ins. Co. v. Bull* (continued...)

this issue is the Third Circuit.[5] This case appears to be one of first impression in this circuit.

Nevertheless, because this court is persuaded by the rationale and conclusion of the Third Circuit, and because a recent, unanimous Seventh Circuit decision implicitly adopted and extended the Third Circuit decision, this court finds that, under § 1332(a)(3), the involvement of aliens from the same alien nation as additional parties on either side or both sides of an action does not destroy diversity in a suit between diverse domestic citizens.

### 1.    __Third Circuit Authority__

In *Dresser Industries, Inc. v. Underwriters at Lloyd's of London*,106 F.3d 494 (3d Cir. 1997), the Third Circuit held that § 1332(a)(3) unequivocally vests federal courts with jurisdiction over disputes in which aliens appear on both sides of the action, even if the alien parties are from the same foreign country, provided there are diverse domestic citizens on both

---

[4](...continued)
*Data Sys., Inc.* 10 F.3d 425 (7th Cir. 1993) (holding that diversity jurisdiction is destroyed when one side of the action has only foreign parties and the other side has a mixture of foreign and domestic parties because the case does not fit within any § 1332 pigeonholes); *Spearing v. National Iron Co.*, 770 F.2d 87 (7th Cir. 1985) (diversity jurisdiction is destroyed if a sole Canadian plaintiff sues a sole Canadian defendant because there is not a United States citizen on each side of the action). However, these cases are distinguishable from the present case. *See infra* Sect. II.A.3.

[5]Some district courts have directly addressed this issue. *See, e.g., Bank of New York v. Bank of America*, 861 F. Supp. 225, 229 (S.D.N.Y. 1994) (holding that the fact that aliens on opposite sides of an action hail from the same country has no bearing on the existence of diversity under § 1332(a)(3)); *Commercial Union Ins. Co. v. Cannelton Indus., Inc.*, 154 F.R.D. 164, (W.D. Mich. 1994) (finding that the requirements of 1332(a)(3) are met with a Canadian defendant and Canadian plaintiff, as long as there is a legitimate dispute and complete diversity between the United States citizens in the action); *Clark v. Yellow Freight Sys., Inc.*, 715 F. Supp. 1377, 1378 (E.D. Mich. 1989) (finding that diversity jurisdiction exists under § 1332(a)(3) even though one plaintiff and one defendant were Canadian citizens, where there was a legitimate dispute between a Michigan corporation and an Indiana corporation).

sides of the action. In *Dresser*, there were two plaintiffs: (1) a Delaware corporation with its principal place of business in Texas and (2) its Canadian subsidiary, a corporation organized under the laws of Canada with its principal place of business in Canada. The defendants were (1) a Pennsylvania corporation with its principal place of business in New York, (2) several unincorporated underwriting syndicates based in London, and (3) several corporations based outside the United States.[6] *Id.* Jurisdiction was premised on § 1332(a)(3) because there were diverse American corporations on both sides of the action, plus aliens as additional parties on both sides. The district court dismissed for lack of subject matter jurisdiction, holding that the presence of the alien parties destroyed complete diversity. *Id.* The Third Circuit reversed, holding that the complete diversity rule does not apply in cases brought under § 1332(a)(3) and that the statute passes constitutional muster under the minimal diversity requirement. *Id.* at 498. As the Third Circuit observed, the statute "can best be understood as a congressional abrogation of the complete diversity rule." *Id.* Three considerations were central to the Third Circuit's analysis: (1) the plain language of § 1332(a)(3); (2) the statute's legislative history; and (3) policy reasonings.

First, the Third Circuit examined the plain language of § 1332. *Id.* at 497-98. In its entirety, the statute states:

---

[6]In *Dresser*, neither the district court nor the Third Circuit specified from which foreign country the defendant corporations hailed. The courts' ambiguity serves as further evidence that the actual citizenship of the alien parties is irrelevant to the jurisdictional analysis, and that the existence of aliens from the same foreign country on opposite sides of an action has no bearing on diversity under § 1332(a)(3).

> (a)   The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –
>
> (1)   citizens of different States;
>
> (2)   citizens of a State and citizens or subjects of a foreign state;
>
> (3)   citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
>
> (4)   a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State of or different States.

28 U.S.C. § 1332(a)(1)-(4).  The court emphasized that, in granting federal jurisdiction when aliens are additional parties, the language of § 1332(a)(3) uses limiting language which plainly requires that the dispute be between domestic citizens of "different States" yet, in sharp contrast, uses the phrase "additional parties" without any such limiting language in describing the alien parties. *Dresser*, 106 F.3d at 497.  Furthermore, the court highlighted that the language used in § 1332(a)(3) differs from that used in subdivisions (a)(1) and (a)(2), which parallel one another. Because subdivision (a)(3) mirrors neither of the other provisions, it need not be interpreted in the same manner. *Id.* at 498.  In other words, nothing in the language of § 1332(a)(3) indicates that aliens as "additional parties" need to be citizens of different foreign states to meet the statute's requirements for diversity. *Id.*

Second, the court in *Dresser* examined the legislative history behind § 1332(a)(3). *Id.* at 497-98.  The court noted that § 1332(a)(3) was added to the Judicial Code in 1948, long after the diversity and alienage provisions had been in effect:  Because the Supreme Court had ruled on diversity and alienage jurisdiction more than a century earlier, *see Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806), Congress was presumably well aware of the complete diversity

requirement when it enacted § 1332(a)(3). *Dresser*, 106 F.3d at 498. Specifically, the court found that, despite its cognizance of *Strawbridge*'s complete diversity requirement, Congress intentionally selected language that differs from the sections in which complete diversity had been applied, thereby indicating that "complete diversity" of alien parties is not required under § 1332(a)(3). *Id.* Furthermore, the Third Circuit noted that the legislative history of § 1332(a)(3) indicates Congress's desire to provide diverse citizens with a federal forum irrespective of the presence of alien parties. Thus, the Third Circuit held that, in accordance with Congress's intent, the actual citizenship of the aliens should be irrelevant to the existence of diversity. *Id.* at 497 n.1 (internal citations omitted).

Finally, the Third Circuit examined policy considerations underlying both diversity and alienage jurisdiction. The court concluded that allowing aliens from the same foreign state on both sides of an action between diverse domestic citizens conforms with such policy considerations. *Id.* at 499-500. The court reasoned that the purpose of complete diversity jurisdiction is to guard against the possibility that state court judges will treat litigants from the forum state more favorably than out-of-state adversaries. *Id.* at 499 (quoting MOORE'S FEDERAL PRACTICE at § 102 App. 03[1]). In terms of outsider bias, the fact that aliens from the same foreign state are on both sides of the action "does nothing to allay concerns that the in-state party will receive more favorable treatment" in the state courts.[7] *Id.* at 500. Moreover, the Third

---

[7] To demonstrate this finding the court in *Dresser* provided the following hypothetical from a district court decision:

Consider a case brought in New York state court where a citizen of New York

(continued...)

Circuit reasoned that significant foreign policy concerns exclusively within the province of the federal government are present to a heightened degree when aliens appear on both sides of the action. *Id.*

In sum, the Third Circuit examined the plain language of § 1332(a)(3), the statute's legislative history, and policy reasoning, to find that §1332(a)(3) unequivocally vests federal courts with jurisdiction over disputes in which aliens appear on both sides of an action – even if the alien parties are from the same foreign country – as long as there are diverse domestic citizens on both sides of the action who are legitimately interested parties in the dispute.

### 2.    <u>Seventh Circuit Authority</u>

Unlike the Third Circuit, the Seventh Circuit has not expressly addressed this issue. However, some recent Seventh Circuit cases do provide guidance.

The Seventh Circuit recently addressed the question of whether the jurisdictional requirements of § 1332(a)(3) are met when a notice of removal indicates only that a party is "a foreign citizen" but does not specify the country of citizenship or where the party is domiciled. *Karazanos v. Madison Two Associates,* 147 F.3d 624, 625 (7th Cir. 1998). In concluding that

---

[7](...continued)
and a citizen of Lithuania sue a Texan and a codefendant. If the co-defendant is a New Yorker, the Texan's fear of bias will be allayed – for in order to penalize the Texan the judge will have to harm one of his or her neighbors. On the other hand, if the codefendant is a Lithuanian, the nervous Texan will be little comforted – he or she has no reason to think that the judge will be any less willing to penalize a Texan and a Lithuanian than to penalize a Texan alone. For diversity purposes, an alien is an alien is an alien.
*Dresser,* 106 F.3d at 500 (quoting *Bank of New York,* 861 F. Supp. at 229).

jurisdictional requirements are met by such bare allegations, the Seventh Circuit stated that § 1332 "does not say anything about specifying from which foreign state an alien hails, and so on its face it does not appear to demand more than an allegation that someone is 'a foreign citizen or subject.'" *Id.* at 627. To support this conclusion, the *Karazanos* Court quoted the Third Circuit's holding in *Dresser* that "[f]or diversity purposes, an alien is an alien is an alien." *Id.* (quoting *Dresser*, 106 F.3d at 500).

If § 1332(a)(3) jurisdictional requirements are met even without specifying from which foreign state an alien hails, then certainly the actual citizenship of the alien parties is irrelevant to the jurisdictional analysis. It follows then that the presence of aliens on opposite sides of an action has no bearing on the existence of diversity under § 1332(a)(3), even if those aliens hail from the same foreign country.

Further, the Seventh Circuit touched on the present issue in *Allendale Mutual Insurance Co. v. Bull Data Systems, Inc.,* 10 F.3d 425 (7th Cir. 1993). At issue in *Allendale* was whether the court had jurisdiction, pursuant to § 1332(a)(3), over an action featuring diverse, rival United States citizens and rival aliens. Applying § 1332(a)(3), the court upheld diversity jurisdiction. *Id.* at 428. The court specifically held that the presence of aliens on both sides of the action did not nullify jurisdiction because the precondition of § 1332(a)(3) – completely diverse United States citizens – had been fulfilled. *Id.* In so stating, the court in *Allendale* carefully distinguished § 1332(a)(3) from the other subsections of the diversity statute:

> [Various cases] state that the presence of foreign parties on both sides of a litigation indeed destroys complete diversity. ... The [reason] is found in the details of the statutory framework. The cases in which the statement appears are

13

ones in which one side of the litigation had only foreign parties and the other had a mixture of foreign and domestic parties, so that the case did not fit any of the possibly applicable jurisdictional pigeonholes: 28 U.S.C. § 1332(a)(2) (suits between "citizens of a State and citizens or subjects of a foreign state"), § 1332(a)(3) (suits between "citizens of different States and in which citizens or subjects of a foreign state are additional parties"), or § 1332(a)(4) (suits between foreign states and citizen defendants). The point was not so much that there were foreigners on both sides – for this is permitted by (a)(3) – as that there was no citizen on one side, which took it out of (a)(3); and (a)(2), when read in light of (a)(3), does not permit a suit between foreigners and a mixture of citizens and foreigners.

*Id.* (citations omitted).

In fact, the court's research has uncovered only one case which held that, under § 1332(a)(3), the requirement of complete diversity applies to the citizens of a foreign state: *DeWit v. KLM Royal Dutch Airlines, N.V.,* 570 F. Supp. 613 (S.D.N.Y. 1983). Aside from *DeWit,* there is no authority in support of engrafting a requirement onto § 1332(a)(3) that alien parties on opposite sides of an action must be from different foreign nations. In fact, leading authorities have rejected *DeWit. See* WRIGHT & MILLER § 3604, at 389 n.20 (labeling the holding of *DeWit* as "dubious"). Even further, in *Dresser* the Third Circuit recognized a holding contradicting *DeWit* when it instead reiterated the holding of another court in the Southern District of New York and found that, for diversity purposes under § 1332(a)(3), "an alien is an alien is an alien." *Dresser,* 106 F.3d at 500 (quoting *Bank of New York,* 861 F. Supp. at 229 (declining to follow *DeWit*)).

### 3.    Clarification of *Allendale* and *Spearing*

The court is mindful of the fact that some courts and commentators have construed dicta in *Allendale* to stand for the proposition that, according to the Seventh Circuit, there is no

jurisdiction under § 1332(a)(3) if aliens on both sides of an action hail from the same foreign country. *See, e.g.,* John J. Watkins, *The "Other" Division: Federal Alienage Jurisdiction,* 1997 ARK. L. NOTES 77, 90 (citing *Allendale* for the assertion that "[s]ome courts have taken the position that there is no jurisdiction under § 1332(a)(3) if one of the alien plaintiffs has the same citizenship as one of the alien defendants");[8] WRIGHT & MILLER at §§ 3604, 3605, 3661 (summarizing *Allendale* as holding that the "presence of foreign litigants on both sides of a litigation does not destroy diversity jurisdiction unless litigants are from same foreign state.").

In *Allendale,* the Seventh Circuit stated: "So why should the presence of citizens of foreign states destroy diversity unless (as in *Spearing*) they are citizens of the same foreign state? The answer is found in the details of the statutory framework." *Allendale,* 10 F.3d 425-28. The court finds that this dicta in *Allendale* has been slightly misconstrued and is easily distinguishable from the case at hand.

The primary issue on appeal in *Allendale* was whether the district court had power to preliminarily enjoin a subsidiary from litigating a parallel suit pending in a foreign court. *Id.* at 430-32. Before considering this issue, however, the Seventh Circuit addressed the jurisdiction of the case. *Id.* at 427-28. According to the district court, the case involved (1) two plaintiffs – a Rhode Island corporation with its principal place of business in Rhode Island and a Great

---

[8]The court points out that Mr. Watkins cites the dicta in *Allendale* for contradictory assertions. First he cites *Allendale* to support his assertion that "[t]he appellate courts have held that [1332(a)(3)] means what it says and does not mandate complete diversity insofar as the alien parties are concerned." Watkins at 89. Then, only four paragraphs later, he cites *Allendale* for the contradictory assertion that "[s]ome courts have taken the position that there is no jurisdiction under § 1332(a)(3) if one of the alien plaintiffs has the same citizenship as one of the alien defendants." Watkins at 90.

Britain corporation with its principal place of business in London, and (2) four defendants – a Delaware corporation with its principal place of business in Illinois; a Maryland corporation with its principal place of business in New York; and two French corporations with their principal places of business in France. *See Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* No. 91 C 6103, 1992 WL 159334, at *1 (N.D. Ill. May 19, 1993). The Seventh Circuit confirmed that "[a] case such as this, in which citizens of states are on both sides of the litigation (Allendale and Alexander & Alexander on one side and BDS on the other) and are completely diverse, fits section 1332(a)(3) to a t." *Allendale,* 10 F.3d at 428 (internal citations omitted). In so stating, the court referred only to the complete diversity of the three *domestic* corporations, implying that the diversity of the *foreign* corporations was irrelevant in its § 1332(a)(3) analysis.

Unfortunately, *Allendale* has been misconstrued because, in dicta preceding its clarification of § 1332(a)(3), it asks and answers the rhetorical question, "[s]o why should the presence of citizens of foreign states destroy diversity unless (as in *Spearing*) they are citizens of the same foreign state?" *Id.* at 425. In so stating, it seems that the Seventh Circuit sought to explain that the presence of foreign citizens from the same foreign state destroys diversity only in situations as posited in *Spearing.* Thus, to fully understand this explanation, one must necessarily examine *Spearing v. National Iron Co.,* 770 F.2d 87 (7th Cir. 1985).

At issue in *Spearing* was whether Canada's worker's compensation law precluded an American corporation from paying damages attributable to its Canadian affiliate. 770 F.2d at 88. *Spearing* involved a sole Canadian citizen suing a sole American corporation, a case clearly falling within the realm of § 1332(a)(2). *Id.* The case did not involve a suit with United States

16

citizens on both sides of the action; therefore, the court did not address a situation falling within the realm of § 1332(a)(3). In dicta, the court observed – in a parenthetical, no less – that there would be no diversity jurisdiction in the hypothetical situation where a sole Canadian plaintiff sued a sole Canadian defendant. *Id.* at 90.[9] It is a true statement that the presence of foreign parties on both sides of an action destroys diversity if there is not a citizen of the United States on each side of the action – this result is mandated by § 1332(a)(2). However, this statement has no bearing on the construction of § 1332(a)(3), or on the present case where there are diverse United States citizens on each side of the action. Thus, the *Allendale* dicta merely explains that the presence of foreign citizens from the same foreign state does not destroy diversity unless a sole alien sues a sole alien, as posited in *Spearing*.

Further, plaintiffs argue that in *Mora v. McDonald's Corp*, No. 96 C 4401, 1997 WL 102546 (N.D. Ill. Mar. 6, 1997), a Northern District of Illinois court held that complete diversity is required for aliens under § 1332. Again, *Mora* is inapposite to the case at hand because *Mora* did not involve an action between citizens of different States with citizens of foreign states as

---

[9]In parenthetical dicta, the court asked the reader to
imagine that the Spearings [the Canadian plaintiffs'] were suing just Pettibone Canada [a Canadian corporation]. (That by the way would have to be a suit in a Wisconsin state court, rather than a federal district court; ... the cases make clear that there would be no basis for federal jurisdiction if there were Canadians on both sides of the case....)

*Spearing*, 770 F.2d at 90 (internal citations omitted). In other words, the court was explaining that there would be no basis for federal jurisdiction if there were *solely* Canadians on both sides of the action. It is this parenthetical observation to which the court in *Allendale* refers when it asks "[s]o why should the presence of citizens of foreign states destroy diversity unless (as in *Spearing*) they are citizens of the same foreign state?" *Allendale*, 10 F.3d 425 (citing *Spearing*, 770 F.2d at 90).

additional parties and, thus, the case did not fall within the realm of § 1332(a)(3). Rather, *Mora* involved an action between a citizen of a foreign state and a citizen of the United States, and, accordingly, jurisdiction was addressed under § 1332(a)(2). Such cases – stating that complete diversity is required among aliens under § 1332(a)(2) – are simply inapplicable here. *See Dresser*, 106 F.3d at 497 (internal citations omitted).[10]

In sum, because this court is persuaded by the rationale and conclusion of the Third Circuit, and because a recent and unanimous Seventh Circuit decision implicitly adopted and extended the Third Circuit's holding, the court finds that, under § 1332(a)(3), the involvement of aliens from the same alien nation as additional parties on both sides of an action does not destroy diversity in a suit between diverse domestic citizens. Thus, the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(3). Accordingly, the court denies plaintiffs' petition for remand. The court shall now consider the defendants' motion to transfer.[11]

**B.    Venue**

_____

[10]In *Dresser*, the court went on to explain why it makes sense to require complete diversity among aliens under § 1332(a)(2) when aliens are on one side of the action and aliens and citizens on the other.

> First, the language of section 1332(a)(2) parallels the language used in section 1332(a)(1). As such, applying the complete diversity requirement to that section represents a judicial attempt to interpret similar provisions in a similar manner. Second, section 1332(a)(2) only grants jurisdiction in cases between aliens and citizens. Cases between aliens on one side and aliens and citizens on the other, therefore, do not fit the jurisdictional pigeonhole.

*Dresser*, 106 F.3d at 498-99 (internal citations omitted).

[11]Because defendants neither cite support nor provide arguments for their motion to dismiss for lack of venue pursuant to Federal Rule of Civil Procedure 12(b)(3) – and because the court finds that venue is proper both in this court and in the Southern District of Indiana – the court addresses only defendants' motion to transfer.

Defendants ask the court to transfer the case to the United States District Court for the Southern District of Indiana in accordance with the parties' forum-selection clause contained in the Purchase Agreement. Federal law, specifically 28 U.S.C. § 1404(a), governs the decision whether to give effect to the parties' contractual choice of venue and transfer the case. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-32 (1988) (addressing whether § 1404(a) is applicable when a forum-selection clause is present).

The existence of a forum-selection clause is a significant factor that figures centrally in the district court's calculus of whether to transfer a case. *Stewart Organization, Inc.*, 487 U.S. at 29. Forum-selection clauses "'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.'" *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 210 (7th Cir. 1993) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (footnote omitted)). A forum-selection clause will not be enforced where "enforcement would be unreasonable and unjust, or [where] the clause [is] invalid for such reasons as fraud or overreaching." *M/S Bremen*, 407 U.S. at 15. Thus, "absent a showing that trial 'in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court,'" the parties will be held to their bargain as contained in the forum-selection clause. *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1291 (7th Cir. 1989) (quoting *M.S. Bremen*, 407 U.S. at 18 (alteration in original)). Here, plaintiffs do not allege that enforcement of the clause would be unreasonable or unjust, or that the clause is invalid because of fraud or overreaching. In fact, plaintiffs make no argument disputing the validity or the

enforcement of the forum-selection clause. Therefore, the court will give the forum-selection clause full effect. Accordingly, the court grants defendants' motion to transfer.

Further, pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil action "[f]or the convenience of parties and witnesses [and] in the interest of justice ... to any other district or division where it might have been brought." 28 U.S.C. § 1404 (a). Transfer is appropriate under § 1404(a) where the moving party establishes: (1) that venue is proper in the transferor district; (2) that venue and jurisdiction are proper in the transferee district; and (3) that the transfer will serve the convenience of the parties and the witnesses and will promote the interest of justice. *See* 28 U.S.C. § 1404(a); *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 n.3 (7th Cir. 1986). It is in the sound discretion of the trial judge to determine the weight accorded to each factor. *See Coffey,* 796 F.2d at 219.

Even if the parties did not have a forum selection clause and if the court were to weigh each factor in § 1404(a), it would still reach the same conclusion. First, venue is proper in this district because a substantial part of the events giving rise to this claim occurred in this district and defendant Kimball is subject to personal jurisdiction. *See* 28 U.S.C. § 1391. In fact, no party disputes that this court has personal jurisdiction over it. Second, venue is proper in the Southern District of Indianapolis because (1) the parties contemplated this venue in their forum-selection clause, (2) two of the parties are Indiana corporations, and (3) Indiana law applies according to the Purchase Agreement. (*See* Def. Mot. Ex. A at 42-43.) Third, the transfer will serve the convenience of the parties and witnesses because there is no showing that any party or witness will experience any inconvenience – much less be deprived of a meaningful day in court

– if the litigation proceeds in Indianapolis. Finally, the transfer will promote the interest of justice because a judge in Indiana is familiar with the applicable Indiana law, and – more importantly – because the forum-selection clause was freely entered into by all the parties, and validly and reasonably represents the parties' solemn agreement as to the most appropriate forum. Thus, all the factors under § 1404(a) favor transfer.

In sum, the court grants defendants' motion to transfer venue. This case is transferred to the United States District Court for the Southern District of Indiana, Indianapolis Division. Defendants' motion to dismiss is denied.

## CONCLUSION

For the foregoing reasons, the court (1) denies plaintiffs' motion to remand; (2) denies defendants' motion to dismiss for lack of venue; and (3) grants defendants' motion to transfer venue. The court orders this case to be transferred forthwith, pursuant to 28 U.S.C. § 1404(a) and Local Rule 83.4, to the United States District Court for the Southern District of Indiana, Indianapolis Division.

Date: **OCT 04 2000**

James H. Alesia
United States District Judge

21